```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
-------------------------------
```
Paul Gustafson, individually and on
behalf of a class,
Plaintiff

Case No._____

      Versus

Primis Bank
Defendant
```
-------------------------------
```

**PARTIES**

1. Plaintiff Paul Gustafson ("Gustafson") is a citizen and resident in Georgia.

2. Defendant Primis Bank ("Primis") is a Virginia Banking entity that does not maintain a place of business, nor does it keep assets in Georgia.

**JURISDICTION** & **VENUE**

3. Subject matter jurisdiction is proper in this Court under diversity jurisdiction 28 USC 1332 because Plaintiff's claims exceed $75,000 and the parties are diverse from each other.

4. Alternatively, this court has jurisdiction under CAFA because there are more than 100 class members and the class's claims are more than 5 million dollars.

5. Venue is proper in this Honorable Court under 28 USC §1391(b)(2) because the events giving rise to the allegations occurred within this district.

**CLASS ACTION ALLEGATIONS**

6. Plaintiff brings this action pursuant to FRCP 23(b)(3) on behalf of himself and the class.

7. The class is defined as follows:

(1) All consumers (2) who are citizens and residents of Georgia (3) where Defendant's records indicate it issued a loan to them that was arranged in conjunction with a door-to-door sale (4) where the loan document does not contain the disclosure that the holder of the note is subject to all claims and defenses the consumer has against the seller or where the door-to-door sale was cancelled by the consumer within 3 business days of signing of the door-to-door sale (5) on or after a date

3 years prior to the date of the filing of this complaint

8. Numerosity: The Class is so numerous that joinder of all class members is impracticable. Plaintiff is unable to allege at this time the exact number of class members; however, Plaintiff believes that there are at a minimum hundreds of Class Members. Plaintiff believes that Defendant's records maintained in the ordinary course of business will readily reveal the exact number of class members.

9. Commonality: This action presents material questions of law and fact common to the Class. Such questions include but are not limited to-

Was Defendant required to include the FTC Holder Notice in its loan documents with Plaintiff and the class members?

Are damages available for Defendant's failure to include the FTC Holder Notice?

Does cancellation of the door-to-door sale cancel the loan agreement?

10. Typicality: Plaintiff's claims are typical of the claims of other members of the Class, as Plaintiff and other members of the Class suffered the same type of harm arising out of Defendant's failure to properly include the FTC Holder Notice.

11. Adequate Representation: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions. Plaintiff is a member of the Class, Plaintiff has no interest antagonistic to any other members of the Class, and Defendant has no defenses unique to Plaintiff.

12. Predominance: The questions of law or fact common to the Class Members predominate over any questions affecting only individual members. Defendant's course of conduct can be discovered without any need for participation by individual Class Members. Similarly, this Court's determination of law can be made without

any need for participation by individual Class Members. The Class's claims present no issues of causation or reliance unique to individual class members.

13. Superiority: A class action is superior to all other methods for the fair and efficient adjudication of this controversy. This action presents textbook facts and circumstances for the conduct of a class action to afford each individual Class Member a fair and efficient manner by which to prosecute his or her common claims and, likewise, a fair and efficient manner by which Defendant may defend such claims.

14. The interests of individual Class Members are overwhelmingly best served by the conduct of a class action.

15. Individual litigation of this matter would unduly increase expenses for all parties and prolong efficient adjudication given the expected size of the class.

16. Upon information and belief, there is no other litigation concerning this controversy that has already commenced by or against members of the class.

17. Class membership is readably identifiable from Defendant's records that they maintain on their borrowers such as name, address, phone number, last known address, driver's license, and other identifying data.

**Count I Violation of Georgia' Fair Business Practices Act, OCGA 10-1-399**

18. At all times relevant to this Complaint, Defendant provides funding in conjunction with door-to-door sales.

19. OCGA 10-1-393.5 b. provides- "Without otherwise limiting the definition of unfair and deceptive acts or practices under this part, it shall be unlawful for …any person who is engaged in home repair work or home improvement work to:

1. Employ any device, scheme, or artifice to defraud a person, organization, or entity;

2. Engage in any act, practice, or course of business that operates or would operate as a fraud or deceit upon a person, organization, or entity."

20. Plaintiff suffered injury as a result of Defendant's conduct in enforcing its home improvement loan without a FTC Holder Notice in its loan agreement.

21. Through a door-to-door sale with Bath Planet of Atlanta ("Bath Planet"), Plaintiff agreed to a bathroom project on August 30, 2023. See Exhibit A.

22. That agreement states "You may cancel this agreement not later than midnight of the third business day following the signing of the agreement. All cancellations must be in writing."

23. Bath Planet had an understanding or agreement with Defendant that Defendant would provide loans directly to consumers to pay for Bath Planet's door-to-door sales to those consumers. See Exhibit B.

24. Defendant has provided a contract which it contends governs the line of credit between Plaintiff and defendant. See Exhibit C.

25. That contract purports to incorporate other documents including the Bath Planet cancellation clause.

26. That contract states "Your Merchant pays transaction fees because of your use of the Loan".

27. That contract states "if this Loan Agreement resulted from a sale in your home or not at an office of the Merchant named above ("In-Home Sale"), the Merchant's salesperson has explained your right to cancel. Any Notice of Right to Cancel and any additional notice of right to cancel provided in the sales contract for an In-Home Sale, and any accompanying addendum provided to you, are incorporated herein by reference."

28. That contract states the merchant is "GutterGard South LLC" which is affiliated with Bath Planet.

29. Bath Planet arranged for Plaintiff to apply for a line of credit for $14,000 with only Bath Planet Defendant to pay for the project.

30. Bath Planet instructed Plaintiff to sign up for a line of credit with Defendant.

31. Defendant instructed Bath Planet not to insert an FTC Holder Notice in its loan agreement.

32. An unauthorized advance of $12,000 in loan proceeds was accessed and went directly from Defendant to Bath Planet on August 30, 2023, without Plaintiff even possessing the money.

33. This was a fraudulent transaction because Plaintiff did not authorize this transaction.

34. The very next day, August 31, 2023, Plaintiff cancelled the bath project with Bath Planet.

35. On September 2, 2023, Plaintiff cancelled the loan with Momnt which is the agent for Defendant.

35. The contract between Plaintiff and Defendant should have been rescinded by both parties because of Plaintiff's cancellation of the contract.

36. Certainly after cancelling the transaction, Plaintiff should not have owed any money to Defendant.

37. Bath Planet soon went out of business and Plaintiff was out $12,000.

38. Defendant continues to send bills to Plaintiff and reports the debt on his credit report.

39.  The FTC's Preservation of Consumers' Claims and Defenses Rule is commonly called the "FTC Holder Rule".

40. The FTC Holder Rule allows consumers to raise seller-related claims and defenses against the holders of the consumer's credit obligation.

41. Ga. Comp. R. & Regs. R. 60-2-5-.01 provides "The Attorney General adopts by reference *16 C.F.R. 433 (1982)*, the Federal Trade Commission's trade regulation rule concerning preservation of consumer's claims and defenses."

42. OCGA 10-1-394 provides "The Attorney General is authorized to adopt reasonable rules, regulations, and standards appropriate to effectuate the purposes of this part and prohibit specific acts or practices that are deemed to be a violation of this part. The Attorney General is also authorized to adopt as substantive rules that prohibit specific acts or practices in violation of Code Section 10-1-393 those rules and regulations of the Federal Trade Commission interpreting Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. Section 45(a)(1)), as from time to time amended."

43. Defendant used a loan agreement failing to comply with this UDAP regulation.

44. Door-to-door sales have a history of high-pressure tactics, deception, and other systematic consumer abuse.

45. A three-day cooling-off period is a remedy designed to meet these problems by giving consumers an

opportunity to reevaluate their purchase decisions away from the salesperson's hard sell.

46. A consumer may cancel a covered home solicitation sale under the FTC Cooling-Off Rule without penalty or obligation within three business days from the day on which the contract was signed.

47. Plaintiff cancelled the home solicitation sale within 3 business days of the contract being signed.

48. The FTC Holder Rule requires sellers to arrange for the FTC Holder Notice to be present in all notes when the seller refers consumers to the lender or is affiliated with the lender by common control or contract or by any formal or informal business arrangement, understanding, course of dealing, or procedure.

49. The remedy lessens sellers' incentive to use high-pressure sales tactics because, when consumers cancel high-pressure sales, sellers are left with no profit for their investment of time and energy.

50. The Cooling-Off Rule applies to the sale, lease, or rental of consumer goods or services primarily for personal, family, or household purposes such as Plaintiff's transaction for a bath remodel.

51. The rule requires sellers to arrange for the FTC Holder Notice to be present in all notes when the seller refers consumers to the lender or is affiliated with the lender by common control or contract or by any formal or informal business arrangement, understanding, course of dealing, or procedure.

52. Here, Bath Planet, the seller, referred Plaintiff to Defendant and has a contractual business arrangement with Defendant and pays fees when Plaintiff accesses his line of credit.

53. The FTC Holder Rule language in the note should have stated, but unlawfully did not state, that the holder is subject to all claims and defenses the consumer has against the related seller, up to the amount of the loan.

54. Defendant has told Plaintiff that his problems are with Bath Planet and not with Defendant and Plaintiff owes the money to Defendant regardless of Bath Planet's fraud.

55. Under Georgia law, individuals who violate the FBPA are subject to additional civil penalties if the violation is committed against elder persons.

56. Plaintiff is an elder person under O.C.G.A. § 10-1-850 because he is over 60 and Defendant is liable for additional damages.

57. Defendant continues to try to collect the loan.

58. Defendant asserts that its loan is independent of the door-to-door sale, and it is not subject to any claims arising from that transaction.

59. The agreement with Primis purports to cancel the consumer's claims and defenses that could have been raised against Primis for the Seller's conduct if the FTC Holder Notice had been included in the loan agreement.

60. By omitting the FTC Holder Notice, Primis engaged in fraudulent conduct which creates a likelihood of confusion and misunderstanding since the FTC Regulation preserving claims and defenses serves to eliminate confusion and misunderstanding created through an artificial bifurcation of a transaction by an installment seller in an effort to insulate the duty to pay from the duty to perform.

61. Defendant failed to inform Plaintiff that its loan documents violated federal law by omitting the FTC Holder Notice.

62. Defendant aided and abetted Bath Planet's failure to put the FTC Holder Notice in its loan agreement.

**Count II- Breach of contract.**

63. Under the agreement with Defendant, Plaintiff had a right to cancel the bath project and the loan "not later than midnight of the third business day following the signing of the Agreement". See <u>Exhibit A</u>.

64. Plaintiff did properly cancel the bath project in writing within 3 business days; indeed, he cancelled the very next day.

65. Defendant's loan agreement incorporates that document in its agreement.

66. By cancelling the bath project, Plaintiff also cancelled the loan.

67. To be sure, Plaintiff also cancelled the loan within 3 business days following the signing of the loan.

68. However, Defendant continues to treat the loan as if it is outstanding, claiming Plaintiff owes it more than $12,000.

69. Plaintiff has been damaged thereby.

70. Plaintiff denies that he agreed to arbitrate this claim.

71. Plaintiff denies that he agreed to have an arbitrator decide whether he agreed to arbitrate this claim.

**Attorney's Fees under 13-6-11**

72. The defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense.

WHEREFORE, the premises considered, Plaintiff prays that this Court grant Plaintiff and the class the following relief:

(a) An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers representing Plaintiff as counsel for the Class;

(b) Punitive damages; and

(c) Actual damages trebled; and

(c) Litigation costs and attorneys' fees; and

(d) Any other relief as may be just and proper.

**JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED this 6th day of May, 2024.

By: /s/ Shimshon Wexler
Georgia Bar No. 436163
S Wexler, LLC
1118 Empire Rd NE
Atlanta, Georgia 30329
T: (212) 760-2400
swexleresq@gmail.com